710 So.2d 1037 (1998)
Carol A. JULIAN, Appellant/Cross-appellee,
v.
James Earl BRYAN, Appellee/Cross-appellant.
No. 97-01331.
District Court of Appeal of Florida, Second District.
May 27, 1998.
*1038 C. Ray McDaniel, P.A., Bartow, for Appellant/Cross-Appellee.
Debra J. Sutton of The Law Office of Debra J. Sutton, P.A., Bartow, for Appellee/Cross-Appellant.
PARKER, Chief Judge.
Carol A. Julian (Mother) appeals the nonfinal order temporarily changing residential custody of the parties' son to James Earl Bryan (Father). The Father cross-appeals the nonfinal order, arguing that the trial court erred in allowing privileged information to be introduced at the hearing. We conclude that the issue on cross-appeal was waived. We further conclude that although the trial court erred in its nonfinal order of temporary custody, the issue is now moot.
The parties have a son who was born out of wedlock in 1993. In 1994, the trial court entered a judgment of paternity awarding the parties shared parental responsibility, with the Mother designated as the primary residential parent with reasonable visitation to the Father.
The Father filed several petitions and motions in order to have the trial court force the Mother to comply with the previous orders of visitation. The Father finally filed a petition for order to show cause for indirect criminal contempt, which he amended to add additional violations of the visitation orders. Before the trial court could hear the matter, the father also filed an emergency motion to show cause. The trial court conducted one hearing based upon the Father's petition for order to show cause, the Father's amended petition for order to show cause, and the Father's emergency motion. Numerous witnesses testified at the hearing.
We agree with the trial court that this case clearly reflects the inflexible attitudes of both parties who exhibit little cooperation toward one another regarding the issues concerning their son. The record supports that there is considerable animosity between the Father's wife and the Mother. Aggravating this situation is the fact that this child has documented health problems which could be lifethreatening. Several of the complaints regarding the denial of visitation concerned times when the child was sick and actually hospitalized.
The guardian ad litem testified that the child should remain with the Mother and noted that both parties were at fault. She testified that this was the worse case with which she had ever been involved. The guardian ad litem recommended that both parties receive counseling in order to learn to communicate with one another.
The court refused to hold the Mother in contempt and stated that both parties were to blame for the lack of communication; however, the trial court placed more of the blame on the Mother. Thereafter, the trial court entered a nonfinal order awarding the Father temporary primary residential care of the child for six months, commencing February 8, 1997, with reasonable visitation periods for the Mother.
We conclude that the trial court erred in awarding the Father temporary custody for six months. While the trial court has discretion to change custody, it should be a permanent change in custody where it is in the best interest of the child, not just as a punishment for frustration of visitation. Although a trial court does not have to give written reasons discussing each factor to be considered in determining the best interests of the child, the record should support that it is in the best interest of that child. See Bader v. Bader, 639 So.2d 122 (Fla. 2d DCA 1994).
Frustration of visitation alone will not justify a change of custody. The trial court must consider whether it is in the child's best interest to change custody. The Fifth District in Williams v. Williams, 676 So.2d 493, 493-94 (Fla. 5th DCA 1996), held that disobeying court-ordered visitation on a continuing and persistent basis constitutes a substantial change along with consideration of the best interest of the child. Under the factors listed in section 61.13(3), Florida Statutes (1995), this consideration would encompass *1039 "the parent who is more likely to allow the child frequent and continuing contact with the nonresidential parent." § 61.13(3)(a), Fla. Stat. (1995). The record supported that both parties contributed to the visitation problems; however, the record does not support that it was in the child's best interest to change the residential custody on a temporary basis.
The trial court has several avenues that it can pursue when dealing with frustration of visitation rights. It can exercise its contempt powers to compel a reluctant parent to comply with visitation orders or award a lump-sum period of visitation to square the loss of past visitation rights.
We note the trial court's frustration in dealing with the Mother and Father and realize that this case reflects what the trial judge believed to be best in solving this visitation nightmare where the parents of this child show little movement toward cooperation. It is clear, that until these parties have counseling and learn to communicate neither will be willing or able to facilitate and encourage a parent/child relationship with the other parent.
Although the trial court erred by awarding temporary residential custody, we must conclude that the Mother's appeal of the trial court order is moot because the temporary custody period with the Father has been completed. We assume the child has been returned to the Mother because, by earlier court order, she is still the primary residential parent. Because the trial court's order for temporary custody was error, that order should not be utilized as a basis for a new order for a permanent change of custody.
NORTHCUTT, J., and RONDOLINO, ANTHONY, Associate Judge, concur.