824 So.2d 127 (2002)
Amos Lee KING
v.
Michael W. MOORE.
No. SC02-1457.
Supreme Court of Florida.
July 8, 2002.

ORDER GRANTING STAY OF EXECUTION AND SETTING ORAL ARGUMENT
The Court, to afford an opportunity for appropriate consideration of the multiple issues in this matter generated by recent decisions of the Supreme Court of the United States, grants a temporary stay of execution until further order of this court.
The Court will hear oral argument at 9:00 a.m., Wednesday, August 21, 2002. A maximum of twenty minutes to the side is allowed.
Petitioner's brief on the merits shall be filed on or before Thursday, July 18, 2002; *128 respondent's brief on the merits shall be filed on or before Monday, July 29, 2002; and petitioner's reply brief on the merits shall be filed on or before Monday, August 5, 2002. Please file an original and seven copies of all briefs.
Per this Court's Administrative Order In Re: Mandatory Submission of Briefs on Computer Diskette dated February 5, 1999, counsel are directed to include a copy of all briefs on a DOS formatted 3-½ inch diskette in WordPerfect 5.1 (or higher) format. PLEASE LABEL ENVELOPE TO AVOID ERASURE.
ANSTEAD, C.J., and SHAW, HARDING, PARIENTE and LEWIS, JJ., concur.
HARDING, J., concurs with an opinion.
PARIENTE, J., concurs with an opinion.
WELLS, J., dissents with an opinion.
QUINCE, J., recused.
HARDING, J., concurring.
I find Justice Wells' dissenting opinion to be very persuasive as to why this Court should decline to stay this execution or consider the impact of Ring v. Arizona, ___ U.S. ___, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In my view, the court that issued the Ring decision is in the best position to interpret its impact on Florida's capital sentencing scheme. The fact that the Supreme Court denied certiorari in this case on this precise issue nearly four days after it issued its opinion in Ring seemingly sends a clear message that Ring is not applicable to this case.
Nevertheless, because it did not specifically state to the contrary, I cannot dismiss the possibility that the Supreme Court intended for this Court to consider the impact of Ring in Florida. Given the gravity of the issue and the potential impact on our state's judicial system, I think this Court must proceed with caution. Therefore I concur with the majority's decision to temporarily stay the execution. Pursuant to this Court's briefing schedule, the parties will be given adequate time to present the issues and this Court will be afforded adequate time to reach a conclusion.
PARIENTE, J., concurring.
For the reasons stated in my concurring opinion in Bottoson v. Moore, 824 So.2d 115 (Fla.2002), regarding the United States Supreme Court's June 24, 2002, landmark case of Ring v. Arizona, ___ U.S. ___, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and the potential implications of Ring for Florida's capital sentencing scheme, I also concur in the majority's decision to enter a temporary stay the execution in this case, pending briefing and oral argument on an expedited basis.
WELLS, J., dissenting.
I find no legal basis to stay the execution in this case. We have finally adjudicated this case. No United States constitutional law applicable to the Florida capital sentencing statute has been held by the Supreme Court of the United States to have changed. To the contrary, the Supreme Court has removed any obstacle for this execution to occur. We are bound by their application of federal constitutional law.
When King's third execution warrant was signed, the Governor set King's execution for January 24, 2002. Prior to that date, King engaged in successive postconviction proceedings, to which this Court rendered a final adjudication. See King v. State, 808 So.2d 1237 (Fla.2002), cert. denied, ___ U.S. ___, 122 S.Ct. 2670, 153 *129 L.Ed.2d 843 (2002). The Supreme Court stayed King's execution in King v. Florida, 534 U.S. 1118, 122 S.Ct. 932, 151 L.Ed.2d 894 (2002), the day before he was scheduled for execution. However, in the Supreme Court's order staying the execution in this case and in Linroy Bottoson's case,[1] the Supreme Court provided:
Should the petition for writ of certiorari be denied, this stay shall terminate automatically. In the event the petition for writ of certiorari is granted, the stay shall terminate upon the issuance of the mandate of this Court.
Id.; see also Bottoson v. Florida, 534 U.S. 1121, 122 S.Ct. 981, 151 L.Ed.2d 962 (2002).
On June 28, 2002, the Supreme Court of the United States denied certiorari in both cases as well as in four other Florida cases which had raised the identical Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), claim.[2] These denials of certiorari occurred just four days after the Supreme Court announced its decision in Ring v. Arizona, ___ U.S. ___, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Therefore, the conclusion inescapably follows that there has been no change in federal constitutional law applicable to Florida's capital sentencing statute since the time the Supreme Court entered in King's case the order for stay of execution, which has now terminated.
The assertion is now made that a stay of execution should be entered by this Court for a period of time sufficient to consider the effect of the Supreme Court's decision in Ring. However, the application of Ring was plainly before the Supreme Court in its review of this Court's decisions in King and Bottoson at the time the Supreme Court stayed these executions. In King, we specifically stated:
King's sixth contention, that Apprendi applies to Florida's capital sentencing statute and the maximum sentence under the statute is death, has been decided adversely to King's position. See Mills v. Moore, 786 So.2d 532, 537-38 (Fla.2001), cert. denied, 532 U.S. 1015, 121 S.Ct. 1752, 149 L.Ed.2d 673 (2001); see also Brown v. Moore, 800 So.2d 223 (Fla.2001) (rejecting claims that aggravating circumstances are required to be charged in indictment, submitted to jury during guilt phase, and found by unanimous jury verdict); Mann v. Moore, 794 So.2d 595, 599 (Fla.2001) (same). We are aware that the United States Supreme Court very recently granted certiorari in State v. Ring, 200 Ariz. 267, 25 P.3d 1139 (2001), cert. granted, ___ U.S. ___, 122 S.Ct. 865, 151 L.Ed.2d 738 *130 (2002); however, we decline to grant a stay of execution following our precedent on this issue, on which the Supreme Court has denied certiorari. Thus, King is not entitled to relief on this issue.
King, 808 So.2d at 1245-46. In Bottoson, we stated:
In Bottoson's third and final habeas claim, he alleges that the U.S. Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), applies to Florida's capital sentencing statute. We have consistently rejected similar claims and have decided this issue adversely to Bottoson's position. See King v. State, 808 So.2d 1237 (Fla.2002), stay granted, 534 U.S. 1118, 122 S.Ct. 932, 151 L.Ed.2d 894 (2002); Mills v. Moore, 786 So.2d 532, 536-537 (Fla.2001), cert. denied, 532 U.S. 1015, 121 S.Ct. 1752, 149 L.Ed.2d 673 (2001); see also Brown v. Moore, 800 So.2d 223 (Fla.2001) (rejecting claims that aggravating circumstances are required to be charged in indictment, submitted to jury during guilt phase, and found by unanimous jury verdict); Mann v. Moore, 794 So.2d 595, 599 (Fla.2001). Thus, we conclude that Bottoson is not entitled to relief on this claim.
Bottoson, 813 So.2d at 36. The termination of the stays of execution by the Supreme Court can only mean that Ring does not apply to the Florida capital sentencing statute.
Moreover, I note that the Supreme Court has repeatedly upheld Florida's capital sentencing statute against federal constitutional attacks, such attacks having been brought pursuant to several provisions of the United States Constitution. The Supreme Court in Ring did overrule Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), "to the extent that it allows a sentencing judge, sitting without, a jury, to find an aggravating circumstance necessary for imposition of the death penalty." Ring, at 2443. The Ring decision is based on the Arizona capital sentencing statute. Importantly, though, the Supreme Court in Ring also cited to its decision in Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989). See Ring, at 2437. In Hildwin, the Supreme Court rejected a Sixth Amendment attack to Florida's capital sentencing statute and explained:
Thus we concluded that the requirement that the findings be made by a judge rather than the jury did not violate the Sixth Amendment because "there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact." [McMillan v. Pennsylvania, 477 U.S. 79, 93, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)]. Like the visible possession of a firearm in McMillan, the existence of an aggravating factor here is not an element of the offense but instead is "a sentencing factor that comes into play only after the defendant has been found guilty." Id. at 86, 106 S.Ct. 2411. Accordingly, the Sixth Amendment does not require that the specific findings authorizing the imposition of the sentence of death be made by the jury.
Hildwin, 490 U.S. at 640-41, 109 S.Ct. 2055. The Supreme Court in Ring overruled neither Hildwin nor multiple decisions in which the Supreme Court rejected the very same constitutional challenges to Florida's capital sentencing statute made now by King.
In 1995 in deciding Harris v. Alabama, 513 U.S. 504, 509-10, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995), the Supreme Court wrote favorably concerning the Florida capital sentencing statute:

*131 We have held Florida's capital sentencing statute to be constitutional. See Proffitt v. Florida, [428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976)]; Spaziano v. Florida, [468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984)]. In Spaziano, we addressed the specific question whether Florida could, consistent with the Constitution, vest sentencing authority in the judge and relegate the jury to an advisory role. While acknowledging that sentencing power resides with the jury in most States, we made clear that the "Eighth Amendment is not violated every time a State reaches a conclusion different from a majority of its sisters over how best to administer its criminal laws." Id. at 464, 104 S.Ct. 3154. We therefore rejected the contention that "placing the responsibility on a trial judge to impose the sentence in a capital case is so fundamentally at odds with contemporary standards of fairness and decency that Florida must be required to alter its scheme and give final authority to the jury to make the life-or-death decision." Id. at 465, 104 S.Ct. 3154; see also Walton v. Arizona, 497 U.S. 639, 648, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990); Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990).
. . . .
In various opinions on the Florida statute we have spoken favorably of the deference that a judge must accord the jury verdict under Florida law. While rejecting an ex post facto challenge in Dobbert v. Florida, 432 U.S. 282, 294, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), we noted the "crucial protection" provided by the standard of Tedder v. State, [322 So.2d 908, 910 (Fla.1975)].
Furthermore, there has been no receding from or rejection by the Supreme Court of its decisions in Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984) (rejecting Fifth, Sixth, Eighth, and Fourteenth Amendment challenges); Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (plurality opinion) (noting that Proffitt upheld constitutionality of Florida's system); Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) (discussing that Proffitt upheld constitutionality of Florida's system and finding no ex post facto violation); Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (plurality opinion) (discussing that Proffitt upheld constitutionality of Florida's system); or Proffitt v. Florida, 428 U.S. 242, 251-60, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (plurality opinion). Indeed, on the same day the Supreme Court released Ring, it released Harris v. United States, No. 00-10666 (U.S. June 24, 2002), which reaffirmed the viability of McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), which was relied on by the Supreme Court in its Hildwin decision. This is likewise consistent with what the Supreme Court explained in its 1999 decision in Jones v. United States, 526 U.S. 227, 250-51, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999):
[Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984),] was followed in a few years by Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989) (per curiam), holding that the determination of death-qualifying aggravating facts could be entrusted to a judge, following a verdict of guilty of murder and a jury recommendation of death, without violating the Sixth Amendment's jury clause. Although citing Spaziano as authority, 490 U.S. at 639-640, 109 S.Ct. 2055, 104 L.Ed.2d 728, Hildwin was the first case to deal expressly with factfinding necessary to authorize imposition of the more severe of alternative sentences, and thus *132 arguably comparable to factfinding necessary to expand the sentencing range available on conviction of a lesser crime than murder. Even if we were satisfied that the analogy was sound, Hildwin could not drive the answer to the Sixth Amendment question raised by the Government's position here. In Hildwin, a jury made a sentencing recommendation of death, thus necessarily engaging in the factfinding required for imposition of a higher sentence, that is, the determination that at least one aggravating factor had been proved. Hildwin, therefore, can hardly be read as resolving the issue discussed here, as the reasoning in Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), confirms.
There is simply no reason for this Court to stay this execution in order to study or further consider Ring. These cases of the Supreme Court of the United States, dealing directly with the Florida capital sentencing statute-not Ring, which deals with the Arizona capital sentencing statute[3]-continue to be what this Court and lower Florida courts are to follow.
I am very concerned about the confusion which will certainly result for Florida's trial judges from this Court's stay of execution. These trial judges have to try cases and adjudicate postconviction motions this week.[4] This Court's entering of this stay of execution will clearly leave the impression that Ring has an effect at present on Florida's capital sentencing statute. Because the Supreme Court has repeatedly upheld Florida's statute and because Ring did not overrule any of these decisions, that impression is clearly incorrect. There are twenty-five years of precedent from the Supreme Court repeatedly upholding the constitutionality of Florida's capital sentencing statute, and nothing in Ring affected those decisions.
NOTES
[1] Similar to King's case, this Court rendered a final adjudication in Bottoson's case for the 1979 murder of Catherine Alexander. See Bottoson v. State, 813 So.2d 31 (Fla.2002), cert. denied, ___ U.S. ___, 122 S.Ct. 2670, 153 L.Ed.2d 844 (2002). The Supreme Court granted Bottoson a stay of execution three hours prior to his scheduled execution. See Bottoson v. Florida, 534 U.S. 1121, 122 S.Ct. 981, 151 L.Ed.2d 962 (2002).
[2] See King v. State, 808 So.2d 1237 (Fla. 2002), cert. denied, ___ U.S. ___, 122 S.Ct. 2670, 153 L.Ed.2d 843 (2002); Bottoson v. State, 813 So.2d 31 (Fla.2002), cert. denied, ___ U.S. ___, 122 S.Ct. 2670, 153 L.Ed.2d 844 (2002); Looney v. State, 803 So.2d 656, 675 (Fla.2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2678, 153 L.Ed.2d 850 (2002) (direct appeal decision); Hertz v. State, 803 So.2d 629, 648 (Fla.2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2673, 153 L.Ed.2d 846 (2002) (direct appeal decision); Card v. State, 803 So.2d 613, 628 n. 13 (Fla. 2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2673, 153 L.Ed.2d 845 (2002) (direct appeal decision); Mann v. Moore, 794 So.2d 595, 599 (Fla.2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2669, 153 L.Ed.2d 843 (2002). As previously noted, King and Bottoson were under an active death warrant at the time of their filing with the Supreme Court.
[3] In footnote 6 of the Ring decision, the Supreme Court expressly stated that Florida's capital sentencing statute was different from Arizona's capital sentencing statute. See Ring, at 2442 n. 6.
[4] Indeed, on Friday, July 5, 2002, a defendant convicted of first-degree murder but not yet sentenced filed in this Court petitions for the extraordinary writs of prohibition and mandamus, citing Ring in seeking to stay the remainder of the penalty phase proceedings and to require the trial court to impose a life sentence. See Coday v. State, SC02-1456, petition at 7 (Fla. petition filed July 5, 2002).