VAUGHN, Justice,
dissenting:
I am not persuaded that Hurst v. Florida[1] requires a finding that Delaware’s death penalty statute violates the Sixth Amendment to the United States Constitution. While I have seen it written that the ;.Florida statute, in effect at the time of Hurst, and the Delaware statute are simi *502 lar, they are fundamentally different on a point which is central to this case. Under Florida’s statute as it then existed, the jury’s finding of the existence of a statutory aggravating factor was purely advisory. In addition, it did not need to be unanimous. A majority vote was enough. The jury made no express finding as to the existence of any specific statutory aggravating factor, which means that some jurors could find the existence of one statutory aggravating factor while others could find the existence of a different factor. Since the jury’s role was purely advisory, the judge could reject a jury finding that no statutory aggravating factor existed and sentence the defendant to death based on his or her own findings. That cannot happen under Delaware’s statute. In Delaware the jury must find the existence of at least one specific statutory aggravating factor unanimously and beyond a reasonable doubt in order for the defendant to be eligible to receive the death penalty. If the jury does not find the existence of a specific statutory aggravating factor unanimously and beyond a reasonable doubt, the process stops, and the judge sentences the defendant to life imprisonment.
For me, the analysis in this case begins with Apprendi v. New Jersey[2] and Ring v. Arizona.[3] In Apprendi, the U. S. Supreme Court held that a factual determination authorizing an increase in a maximum prison term must be found by a jury beyond a reasonable doubt.[4] In Ring, the Court applied Apprendi to Arizona’s death penalty statute.[5] The Arizona statute in effect at the time of Ring gave the jury no role in sentencing.[6] The law authorized a judge to sentence a defendant to death for the crime of murder if the judge found at least one of certain, enumerated aggravating circumstances to exist and “there [were] no mitigating circumstances sufficiently substantial to call for leniency.”[7] This language created a form of a weighing process which the judge engaged in if he or she found that an aggravating circumstance existed.
The U.S. Supreme Court observed that under Arizona’s statute, a “death sentence may not legally be imposed ... unless at least one aggravating factor is found to exist beyond a reasonable doubt.”[8] It stated that “[t]he question presented was whether that aggravating factor may be found by a judge, as Arizona law specifies, or whether the Sixth Amendment’s jury trial guarantee, made applicable to the States by the Fourteenth Amendment, requires that the aggravating factor determination be entrusted to the jury.”[9] The Court reasoned that a jury must determine “any fact on which the legislature conditions an increase in [a defendant’s] maximum punishment,”[10] and overruled Walton v. Arizona[11] “to the extent that it allows a sentencing judge, sitting without a *503 jury, to find an aggravating circumstance necessary for the imposition of the death penalty.”[12] The opinion did not discuss any jury fact-finding role in the weighing process that followed the finding of the existence of an aggravating circumstance.
In his concurrence in Ring, Justice Sca-lia said that “today’s judgment has nothing to do with jury sentencing. ... Those States that leave the ultimate life-or-death decision to the judge may continue to do so....”[13] This statement brought no comment from the majority. Justice Breyer concurred in the judgment because of his view that the Eighth Amendment requires jury sentencing. All of the other eight Justices passed on the opportunity to join his concurrence.
It follows, in my view, that in 2002 when Ring was decided, the U.S. Supreme Court held the view that the Sixth Amendment required the jury to find the existence of an aggravating factor, unanimously and beyond a reasonable doubt, in order for a defendant to be sentenced to death, but did not require that all the facts underlying the weighing process be found by a jury, and did not require jury sentencing. Ring stands only for the principle that the jury must find the existence of at least one statutory aggravating factor, unanimously and beyond a reasonable doubt, in order to elevate the defendant’s maximum punishment from life imprisonment to death. That is the view of Ring which this Court adopted in Brice v. State,[14] which I think was correct then and remains correct after Hurst.
The pertinent difference between Arizona’s statute at the time of Ring and Florida’s statute was that under Arizona’s statute the jury had no role in sentencing, whereas under the Florida statute it had only an advisory role. After Ring, that is a distinction without a difference. It is clear that the characteristics of Florida’s statute failed to comply with Ring’s requirement that a jury must determine “any fact on which the legislature conditions an increase in [a defendant’s] maximum punishment.” [15] Florida never changed its statute to bring it into compliance with Ring.[16] Although Florida attempted to defend its statute before the U. S. Supreme Court in Hurst, the statute’s failure to comply with Ring is actually quite obvious. I think that after Ring was decided, the eventual overruling of Hildwin v. Florida[17] and Spaziano v. Florida,[18] which occurred in Hurst, was very predictable.
Much is made of the sentence in Hurst which reads “[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death.”[19] When this sentence is read as supporting a conclusion that the Sixth Amendment requires jury fact finding in the weighing process or jury sentencing, I think it is read out of context. I believe that the most reasonable explanation of Hurst is that it applied Ring without broadening Ring. In Hurst, the majority as much as says so, in my opinion:
The analysis the Ring Court applied to Arizona’s sentencing scheme applies *504 equally to Florida’s. Like Arizona at the time of Ring, Florida does not require the jury to make the critical findings necessary to impose the death penalty.[20]
Another passage in Hurst recognizes the rule set forth in Ring. Referring to the Florida Supreme Court, the Court stated:
As relevant here, the court rejected Hurst’s argument that his sentence violated the Sixth Amendment in light of Ring. Ring, the court recognized, “held that capital defendants are entitled to a jury determination of any fact on which the legislature conditions an increase in the maximum punishment.” But the court considered Ring inapplicable in light of this Court’s repeated support of Florida’s capital sentencing scheme in pre-Ring cases.[21]
In responding to the State of Florida’s arguments, the Court again refers to death eligibility:
Florida concedes that Ring required a jury to find every fact necessary to render Hurst eligible for the death penalty..,. The State fails to appreciate the central and singular role the judge plays under Florida law. As described above and by the Florida Supreme Court, the Florida sentencing statute does not make a defendant eligible for death until findings by the court that such person shall be punished by death.[22]
Whether a jury should be required to find the existence of all facts which underlie the weighing process or have a greater role in the weighing process was not before the Court in Hurst. In my opinion, the Court was not discussing the weighing process in Hurst, The question presented in Hurst was simple and straightforward:
Whether Florida’s death sentencing scheme violates the Sixth Amendment or the Eighth Amendment in light of this Court’s decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).[23]
The question presented did not ask whether the jury’s fact finding role should be broadened. Timothy Lee Hurst’s attorneys did not argue, as far as I can determine, that the Sixth Amendment requires that the juiy must find all facts underlying the weighing process. They did not need to because the Florida statute failed to comply with Ring’s requirement that the jury make all findings of fact which make a defendant death eligible.
In their opening brief in the U.S. Supreme Court, the attorneys for Timothy Lee Hurst included an argument which I read as an argument that Florida’s death penalty statute is unconstitutional because it is not like Delaware’s. After arguing that Hildwin — a case which had previously upheld Florida’s death penalty statute[24]— should be overruled, counsel for Timothy Lee Hurst argued:
Tellingly, the three other States that, at the time of Ring, had “hybrid systems, in which the jury renders an advisory verdict but the judge makes the ultimate sentencing determinations,” Ring, 536 U.S. at 608 n.6, 122 S.Ct. 2428, modified their capital sentencing schemes after Ring to ensure that the jury makes all findings necessary for imposition of the death penalty (even if the judge still *505 selects the sentence). See Brice v. State, 815 A.2d 314, 320 (Del. 2003)... ,[25]
Timothy Lee Hurst’s attorneys themselves described Delaware’s statute as one under which “the jury makes all findings necessary for imposition of the death penalty.”[26] In my opinion, they are obviously referring to the death eligibility finding. Notice the similarity of this passage from Timothy Lee Hurst’s opening brief to the statement in the majority opinion in Hurst that a jury must “find • each fact necessary to impose a sentence of death.”
At oral argument before the Court, the first remark made by the attorney representing Timothy Lee Hurst referred to death eligibility:
[Attorney for Timothy Lee Hurst]: Under Florida law, Timothy Hurst will go to his death despite the fact that a judge, not a jury, made the factual finding that rendered — rendered him eligible for death. That violates the Sixth Amendment under Ring?[27]
Just a question later, he answers a question by again referring to death eligibility:
Justice . Sealia: Is there ever a case in which the jury found aggravators and recommended the death sentence, and the judge reversed that finding?
[Attorney for Timothy Lee Hurst]: There may well be. This is principally a case about the finding of death eligibility, not sentence selection.[28]
Later in the argument, the attorney for Timothy Lee Hurst, in response to another question from Justice Sealia, refers to death eligibility and not the determination of the sentence:
[Attorney for Timothy Lee Hurst]: Justice Sealia — exactly. And, Justice Sealia, leaving aside our Eighth Amendment point in our brief — that followed on Justice Breyer’s concurrence in Ring, the— this is all about the eligibility, not the determination of what sentence applies.[29]
I interpret the statement in the majority opinion in Hurst that a jury must find “each fact necessary to impose a death sentence” to mean that the jury must find each fact that is necessary to increase the maximum punishment that the defendant may receive from a sentence of life imprisonment to the death penalty. Those facts are, in this case, with respect to Count I, (1) Rauf caused the death of the victim, (2) he did so intentionally, and (3) at least one, specific statutory aggravating factor exists; and, with respect to Count II, (1) Rauf, while engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit the felony of Robbery in the First Degree, (2) did recklessly cause the death of the victim. Since the elements of Count II contain a statutory aggravating factor within them, no finding of an additional statutory aggravating factor is required with respect to that Count. In my view, those are the facts “necessary” to impose the death penalty. If the U.S. Supreme Court in Hurst had intended' to broaden Ring to require that *506 the jury make findings of fact in the weighing process or be the actual sentencing authority, I think it would have said so more directly and more expressly.
Recently, in May and June of this year, the U. S. Supreme Court vacated the judgments in three Alabama death penalty cases; and remanded one to the Alabama Supreme Court and two to the Court of Criminal Appeals of Alabama for further consideration in light of Hurst.[30] Alabama law is relevant to the Delaware statute. Its statute, like Florida’s, gives the jury only an advisory role in a death penalty sentencing. After Ring, Alabama did not amend its death penalty statute, but the Alabama Supreme Court performed a judicial “repair” to bring Alabama into compliance with Ring.[31] In Ex parte McGriff, it stated as follows:
At no time during a retrial of the charge against McGriff should the jury be told that its decision on the issue of whether the proffered aggravating circumstance exists is “advisory” or “recommending.” Rather, the jury should be instructed that, if it determines that the aggravating circumstance does not exist, the jury must return a verdict, binding on the trial court, assessing life imprisonment without the possibility of parole as the penalty. The jury should further be instructed that, if and only if, it unanimously finds the aggravating circumstance to exist beyond a reasonable doubt, the jury should weigh the aggravating circumstance against the mitigating circumstance or circumstances, if any, and to return a verdict in accordance with § 13A-5-46(e)(2) and (3) and (f)....[32]
The jury’s verdict in the weighing process, like in Delaware, is advisory.
On June 17, 2016, after the remand orders, the Court of Criminal Appeals of Alabama, in Ex parte State,[33] in essence published its reconsideration of Ring after Hurst. It soundly rejected the view that Hurst broadened Ring, stating:
The Court in Hurst did nothing more than apply its previous holdings in Ap-prendi and Ring to Florida’s capital-sentencing scheme. The Court did not announce a new rule of constitutional law, nor did it expand its holdings in Apprendi and Ring. As the State correctly argues, “Hurst did not add anything of substance to Ring.”[34]
Until the U.S. Supreme Court speaks more clearly otherwise, I agree with this ruling by the Court of Criminal Appeals of Alabama.
Justice Scalia, who at the time of his concurrence in Ring believed the Sixth Amendment allows a State to give death penalty sentencing authority to a judge, is with the majority in Hurst. If he had changed his mind since Ring, I think he would have said so and explained why. Justice Breyer is still just concurring in the judgment only because he believes the Eighth Amendment requires jury sentenc *507 ing. And, as before, all of the other Justices passed on the opportunity to join in his concurrence.
I do think that there is ambiguity in Hurst. A concurring judge in the June 17, 2016 Alabama case I mention above suggests that the vagueness may be deliberate, and I wonder the same thing.[35] Justice Sotomayor, for instance, states in her dissent from the denial of certiorari in Woodward v. Alabama that a finding that the aggravating factors outweigh the mitigating factors is a finding of fact which must be made by a jury.[36] The case would have given the U.S. Supreme Court an opportunity to review the Alabama death penalty statute. However, there apparently were not three other Justices who agreed with her that certiorari should be granted. In Woodward she was writing for herself. In Hurst she was writing for a majority of seven. I read Hurst as stopping short of what Justice Sotomayor stated very clearly in her dissent in Woodward.
Until the U.S. Supreme Court resolves this vagueness, I resolve it by concluding that Hurst applies Ring as interpreted by Brice but does not broaden it. I am satisfied that Delaware’s death penalty statute complies with the Sixth Amendment as the law on that amendment is currently interpreted by the U.S. Supreme Court. Therefore, I answer the certified questions as follows:
1. Yes, so long as the jury has first found the existence of at least one statutory aggravating factor unanimously and beyond a reasonable doubt;
2. Given my answer to Number 1, my answer to Number 2 is No;
3. No;
4. Given my answers to the previous questions, my answer to Number 4 is No; and
5. Given my answers to the previous questions, Number 5 is not applicable. I do agree that 11 Del. C. § 4209 is not severable.

. — U.S. -, 136 S.Ct. 616, 616, 193 L.Ed.2d 504 (Jan. 12, 2016). .

. 530 U.S. 466, 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

. 536 U.S. 584, 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

. Apprendi, 530 U.S. at 490, 120 S.Ct. 2348.

. Ring, 536 U.S. at 596, 122 S.Ct. 2428.

.Id. at 592, 122 S.Ct. 2428.

. Id. at 593, 122 S.Ct. 2428 (quoting Ariz. Rev. Stat. Ann. § 13-703(F) (2001)).

. Id. at 597, 122 S.Ct. 2428 (quoting State v. Ring, 200 Ariz. 267, 25 P.3d 1139, 1151 (2001) (en banc)).

. Id.

. Id. at 589, 122 S.Ct. 2428.

. 497 U.S. 639, 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990).

. Ring, 536 U.S. at 609, 122 S.Ct. 2428.

. Id. at 612, 122 S.Ct. 2428 (Scalia, J., concurring).

. 815 A.2d 314, 314 (Del. 2003).

. Ring, 536 U.S. at 589, 122 S.Ct. 2428.

. Hurst, 136 S.Ct. at 620.

. 490 U.S. 638, 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989).

. 468 U.S. 447, 447, 104 S.Ct. 3154, 82 L.Ed.2d 340(1968).

. Hurst, 136 S.Ct. at 619.

. Id. at 621-22.

. Id. at 620-21 (citations omitted).

. Id. at 622 (internal quotation marks omitted).

. Hurst v. Florida, — U.S. ——, 135 S.Ct. 1531, 1531, 191 L.Ed.2d 558 (2015).

. Hildwin, 490 U.S. at 640-41, 109 S.Ct. 2055.

. Brief of Petitioner at 25, Hurst v. Florida, -U.S.-, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016) (No. 14-7505), 2015 WL 3542784 at *25.

. Id.

. Transcript of Oral Argument at 3, Hurst v. Florida, — U.S. -, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016) (No. 14-7505), 2015 WL 5970064, at *3.

. Id. at *4.

. Id. at *12.

. See Kirksey v. Alabama, — U.S.-, 136 S.Ct. 2409, 195 L.Ed.2d 777 (2016); Wimbley v. Alabama, — U.S. --, 136 S.Ct 2387, 195 L.Ed.2d 760 (2016); Johnson v. Alabama, - U.S. -, 136 S.Ct 1837, 1837, 194 L.Ed.2d 828 (2016).

. Ex parte McGriff, 908 So.2d 1024, 1037-39 (Ala. 2004).

. Id. at 1038.

. 2016 WL 3364689 (Ala. Crím. App. June 17, 2016).

.Id. at *6.

. Id. at *13.

. Woodward v. Alabama, — U.S.-, 134 S.Ct. 405, 410-11, 187 L.Ed.2d 449 (2013).